IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KELLY KING, | CV 16–27–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| RECREATIONAL EQUIPMENT, INC., | |
| Defendant. | |

Defendant Recreational Equipment Inc., ("REI") moves for partial summary judgment in the above-captioned matter. Plaintiff Kelly King ("King") opposes this motion. For the reasons described below, the Court will deny REI's motion.

## FACTUAL BACKGROUND

This factual background serves to provide an introduction to the issues presented. The Court will add additional facts in later sections as necessary to explain its reasoning.

King was an employee at REI from 2010 until her termination in July of 2015. She began her employment as a seasonal employee and was eventually promoted through the ranks to Retail Sales Manager. King began her position as Retail Sales Manager in June of 2015 at REI's store in Missoula, Montana. On

-1-

July 17, 2015, King was asked to speak with Asset Protection investigator Andy Panfil ("Panfil"). This conversation was conducted over the phone. King's direct supervisor, Missoula Store Manager Sean Kissane ("Kissane"), was present when this conversation took place. Panfil asked King about two t-shirts she had purchased on May 22, 2015, where she received a 50% "ProDeal" discount as a store employee. King stated that she had purchased these t-shirts as gifts for her father and her father's dentist. However, under REI's discount policy, certain items purchased by employees that are intended to be gifts, such as t-shirts, are only eligible for a 30% discount.

When confronted with these facts, King states she immediately recognized that the purchase violated REI's discount policy. King vehemently maintains that use of the ProDeal discount was an error and not intentional. King alleges that she simply forgot to check her receipt and would never intentionally jeopardize her career over a couple of t-shirts.

Later, during a follow-up call, Panfil asked King if she knew anyone in Minnesota and mentioned two additional shirts that were returned to a store in Maple Grove, Minnesota. King maintains that she initially answered that she did not know anyone in Minnesota, despite the fact that she had lived there for several years and knew multiple people there. King states that she immediately corrected

herself and only answered in the negative because she was confused, anxious, and felt like the room was spinning. King states that Panfil then asked her whom she would have given her receipt or employee number to, and asked if she knew anyone who worked at the Maple Grove store. King asserts that she was unable to answer his questions because, at this point, she was embarrassed, scared, and could not remember giving out her employee number or a receipt. King then got off the phone with Panfil and began making a written statement about the purchase.

While making her written statement, REI's Regional Asset Protection Manager, John Mulheran ("Mulheran"), called King and asked if she knew anyone named "Lindesmith" in Minnesota. (Doc. 16-1 at 45.) King states that she did not immediately recognize the name and told Mulheran that her father's dentist is named Dr. Lind. Mulheran eventually clarified the name to be "Lisa Lindesmith" and King remembered she had given two shirts to her former veterinarian, who she knew as "Dr. Lisa." (*Id*.) King told Mulheran that she believed she had given the shirts to Dr. Lisa and her partner in January or February of 2015.

However, REI's records show that two shirts were purchased by King on April 20, 2015, and subsequently returned by Dr. Lisa to the Maple Grove store on July 5, 2015. REI's records also show that these shirts were purchased using the

50% ProDeal discount. King admits that this was a second violation of REI policy, but maintains that she never asked for the 50% discount. Nonetheless, Mulheran determined that King was lying.

A few days later, King met with Retail Director Julie Lochner ("Lochner") and Human Resources Business Partner Kelly Troyner ("Troyner"). King again could not remember in detail when she gave the shirts away but steadfastly maintained that she did not intentionally violate the discount policy. King was subsequently terminated by REI for these violations.

King filed suit in Montana's Fourth Judicial District Court, Missoula County, alleging causes of action for wrongful discharge and breach of contract. REI removed to this Court alleging diversity jurisdiction. REI now seeks partial summary judgment on King's claim of wrongful discharge. REI asserts that King's discharge was lawful and puts forth three arguments in support of its motion: (1) the company followed its personnel policies in terminating King's employment; (2) King's termination was for good cause due to her discount policy violations and her inability to provide a satisfactory explanation; and (3) King cannot prove she was damaged by her termination.

**LEGAL STANDARD**

Summary judgment is required when the "movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that no genuine dispute exists. The burden then shifts to the non-moving party to present affirmative evidence showing the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Summary judgment is warranted when the documentary evidence produced by the parties permits only one conclusion. *Id.* at 251. Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## ANALYSIS

### I. REI's Personnel Policies

King maintains she was wrongfully discharged under Montana's Wrongful Discharge from Employment Act ("WDEA"). Mont. Code Ann. §§ 39–2–901 to

39–2–915 (2015).  It is undisputed that Kings was not a probationary employee. Under the WDEA, an employer's discharge of a non-probationary employee is lawful if: (1) the employer did not retaliate against the employee for protected activities; (2) the employer had good cause to terminate the employee; and (3) the termination did not violate the express provisions of the employer's personnel policies.  Mont. Code Ann. § 39–2–904.

Here, King asserts that summary judgment is precluded because REI discharged her in violation of its express personnel polices.  In support of her argument, King cites to the document entitled "Employee Discount and ProDeal Violations."  (Doc. 14-12 at 1.)  This document states that "[a]ll infractions or suspected infractions of REI's discount and ProDeal programs will be investigated to determine . . . if the infraction was intentionally committed, or occurred through a good faith mistake."  (*Id*.)  The "policy" continues to state that when REI determines that an "employee . . . has committed a discount or ProDeal violation mistakenly without conscious intent . . . [t]he employee will be placed on Written Notice using the performance improvement process."  (*Id.* at 2.)

King argues that there is substantial evidence that REI violated this alleged policy when she was terminated.  Primarily, King contends that REI failed to establish that her violations of the discount policy were intentional, and not merely

carelessness or a mistake. In support, King highlights the testimony of the people involved in her termination, including Mulheran, Kissane, Lochner, and Troyner, After reviewing their testimony, the Court agrees with King that, viewing the evidence in a light most favorable to the non-moving party, there is a genuine dispute of fact as to whether REI determined that King's violations were intentional before terminating her.

First, the Court agrees that it is undisputed that Mulheran believed that King's violations were intentional. However, Mulheran was not the sole person responsible for her termination. Kissane, the Missoula Store Manager, testified that "it's not [REI's] burden to prove intent in every instance." (Doc. 16-8 at 19.) He also stated that he could not "say for certain" that King's violations were intentional. (Doc. 16-8 at 20.) Additionally, Lochner, REI's Retail Director, appears to have initially told another REI employee that King's violations were not intentional before testifying that they were. (Doc. 16-9 at 2.) This fact creates a credibility issue for the jury. Lastly, Troyner, REI's Human Resources official, described King's actions as "carelessness," as opposed to a willful violation of the policy. (Doc. 16-12 at 7.) Troyner also disputed the fact that REI had to prove that King's "conduct was intentional." (*Id*.) The Court finds that this testimony creates a genuine dispute of material fact as to whether REI determined that

King's actions were intentional.

Despite this testimony, REI asserts that the "policy" cited by King was not an actual REI personnel policy and, instead, was merely a human resources' guideline. REI also points to other personnel policies that state a violation of REI's discount policies "may result in disciplinary action up to and including termination of your employment." (Doc. 14-6 at 1.) However, these arguments merely highlight that there is a disputed issue of fact as to which policy was, in fact, REI's actual controlling personnel policy. This argument is supported by Mulheran's testimony were he stated that he had no knowledge of whether the policy cited by King was in fact an actual REI personnel policy or a human resources' guideline. The Court thus finds that there is a dispute of fact as to whether the document entitled "Employee Discount and ProDeal Violations" (Doc. 14-12) was an express personnel policy of REI or if it was simply a human resources' guideline, or whether, in fact, it makes any difference.

**II. Good Cause**

In addition to the issue of REI's personnel policies, the Court also finds that there is a disputed issue of fact as to whether King was terminated for "good cause." Under the WDEA, a termination is wrongful if it lacked good cause. Mont. Code Ann. § 39–2–904(1)(b). "'Good cause' means reasonable job-related

grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Mont. Code Ann. § 39–2–903(5). A legitimate business reason is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Buck v. Billings Mont. Chevrolet, Inc.*, 811 P.2d 537, 540 (Mont. 1991).

However, a court may not substitute its judgment for an employer's discretion in employment matters. *McConkey v. Flathead Elec. Coop.*, 125 P.3d 1121, 1126 (Mont. 2005) ("It is inappropriate for courts to become involved in the day-to-day employment decisions of a business."). An employer's discretion is greatest "where the employee occupies a 'sensitive' managerial position exercising 'broad discretion[.]'" *Id.* (quoting *Buck*, 811 P.2d at 541). Deference to an employer's business judgment is particularly great when the employer must place substantial trust in the employee's decision-making. *Id.* at 1128.

Here, King asserts that REI arbitrarily terminated her for violating the discount policy. In support, King states that other employees have been found in violation of the discount policy and have not been terminated. Further, when these employees were investigated, REI made specific determinations as to whether their violations were intentional. During these investigations King asserts REI

applied the same policy it now maintains is a guideline. The Court agrees with King that this creates an issue of fact as to whether REI applies its policies arbitrarily.

Regardless, REI maintains that King was a manager and, thus, had the utmost discretion as to whether she should have been terminated. However, King maintains that her duties did not require the exercise of broad discretion and REI did not have the unfettered authority to terminate her. For example, as noted in REI's reply brief, King had only been promoted to Retail Sales Manager less than seven weeks before she was terminated. She was also one of three Retail Sales Managers at the Missoula store who all worked under one Store Manager. Further, at the time of her termination, King had yet to begin the process of Retail Sales Manager training. REI states that this process would have taken anywhere from nine to twelve months to complete. Finally, King asserts that as a Retail Sales Manager she lacked any discretion to make major decisions that would significantly affect REI, including purchasing, pricing, and marketing. The Court thus finds that there are disputed issues of fact as to whether King occupied a sensitive managerial position which "require[d] the exercise of broad discretion." *Buck*, 811 P.2d at 541.

**III. Damages**

Lastly, REI contends that King cannot prove she was damaged as a result of her termination. REI points to the fact that, shortly following her discharge, King was able to secure employment in another company that paid more than she was making at REI. King disputes REI's argument and states that her Complaint alleged damages for future lost wages. Further, King argues, given the trajectory of her career based upon her past performance, it was reasonably ceratin that she would have been eventually promoted to a Store Manager position and would have been making more money than she does currently. REI argues in response that it is pure speculation that King would have been promoted, especially given the fact that she had violated the store discount policy multiple times. Despite this argument, the Court finds that this is a factual question best left to the jury. The Court will permit King to present evidence that she would have eventually been promoted and allow the jury to determine the appropriate amount of damages.[1]

Accordingly, IT IS ORDERED that REI's Motion for Partial Summary Judgment (Doc. 12) is DENIED.

---

[1] The Court also notes that REI's argument appears to run counter to its assertion that the Court has jurisdiction over this matter. When REI removed the case to this Court, it claimed that the jurisdictional amount for diversity jurisdiction was satisfied. (Doc. 1 at 2.) If the Court were to now accept REI's argument concerning damages, the Court would be required to remand this case to Montana's Fourth Judicial District Court. The Court declines to do so because, as stated above, the question of the proper amount of damages is a question for the jury.

Dated this 6th day of December, 2016.

_____
Dana L. Christensen, Chief District Judge
United States District Court